Oh, um, um, Judge Hamilton, Judge Barrett. I'm here. All right. After the argument, we'll have to, uh, discuss the conference and where it will be held. Um, Mr. Ross, Mr. Murphy, are you there? Mr. Russell Burby's here. Wonderful. Thank you for being there. Thank you for being anywhere. All right. Um, case number 19 1999. Uh, yes. And Mesa Morales versus William Barr and, um, Mr. Ross. Yes, Your Honor. I'm Charles Ross for the petitioner. Mr. Mr Morales. This case involves the intersection of removal proceedings in the UBC, which Congress created for victims of certain criminal activity, particularly domestic violence, offenses and other violent crimes. Um, Congress wants UBC's in general to be judiciated by a specialized unit within the Department of Homeland Security that's trained on psychotic domestic violence and why victims don't leave their abusers and that sort of thing. Um, ironically, Congress's good intentions create a bit of a complexity where the UBC applicant is in removal proceeding. Um, the court excuse me. Forgive me. This is Jack Roger. Uh, Mr. Ross, at this time, uh, do you have any information about when Mr Mason Morales is likely to actually receive a new visa? I have a little information. My information is limited. My brother may have better information. The reason is that by regulation, people are, um, the numeric miracle cap of 10,000 allocated per year in order of applications being received. So although, for instance, my client case is probably somewhat expedited. I know it doesn't feel expedited, but it was somewhat expedited over the normal processing time. It's the order that he filed his application that that counts for these purposes. So somewhere somewhere is in the neighborhood of 45 years. It could be longer. Council, this I have a question about the legal effect of the waiver of inadmissibility by the I J. So I'm having trouble figuring out just because of the oddity of the waiver of inadmissibility in the grant of the U. S. Visa being separated, figuring out whether you know, if we take your point of view of the case, it's better to think of this as a situation in which the waiver of inadmissibility simply establishes eligibility for the other kinds of relief, ie the U visa, which is the way it functions in other contexts like cat relief, etcetera. Or whether this waiver of inadmissibility in those situations that kind of relief the waiver of inadmissibility and then the grant of relief are simultaneously thought. So should we think about this is that your position that the grant of the waiver of inadmissibility essentially makes him not removable as a legal matter so that the I J should conclude the case by saying he's not removable. And then, but if that's the case, what's the point of getting a new visa? I'm just trying to figure out what the legal framework we really ought to be applying is. Yes, you're on that. You're getting to the heart of the question. Um, so I think the answer is, um, it's to be technical. It's not that you're not removable. It's that the removability grounds are are are waived. And that matters, for instance, because if somebody gets a waiver today and then tomorrow commit some other bad act or Congress changes the law and the person becomes inadmissible under some of the ground, the prior inadmissibility doesn't go away. It's just been waived. But the consequence of a waiver of board has been, you know, that the person is in order to move pursuant to the grounds of inadmissibility that are just in wait. Now, I think you're right to find a situation that's really kind of exactly on point, because in other situations that often happens, um, when the immigrant is in LPR. So, for example, you know, if the ground if the ground of admits if the ground for an inadmissibility are removed, then there's, you know, something in place and the LPR status permits him to stay. This is more. This is unusual because there's not an affirmative permission. You know, the visa that otherwise permits him to stay. I think that's true. There is a distinction here between the other cases that we are citing in this case. The government can't really point to any any situation where the board does order removal after gaining a waiver. There's an implication that the government raises that a case can't be terminated unless somebody's moving into some lawful status. If you examine that proposition, I don't think it stands up. For instance, if the person who, um, where the government, um, erred in serving the notice to appear, perhaps as in Ortiz Santiago, perhaps the government failed to include all the necessary information on the charging back. The consequence there is you terminate the proceeding. That doesn't give the person any legal status. It just leaves them in the same position that they were in, you know, before the proceedings began. And in this case, it would need the applicant to respond in the rule. Pursuing it would leave them able to pursue when you're saying terminate the proceedings. Are you referring to administrative termination like a Castro tomb issue? Uh, Castro to involve something called administrative closure. I'm sorry, terminology, but administrative closure is like a continuum without a specified end date. Okay, so termination is different. Termination is the end of removal proceedings. Of course, it's only ended as long as if the person is ultimately denied to you or if they do some other bad act. And if the waiver to be three, they would concede to be able to restart proceedings and charge my client again. Um, so it's not like a forever termination, but it's a termination pursuant. The person can't be ordered removed under these inadmissibility grounds of adjusting ways. If you can't be removed under those grounds, then termination is the I'm sorry if I cut you off. I'm sorry if you can't be moved on those grounds, that termination is what follows from that. The government. What would you identify as an appropriate continuance in this case? So, um, the government has suggested that you may want to rename this sheet in light of the court's recent decision a couple weeks ago in Gara Rocha. Um, I mean, if the problem with either administer, well, the problem with administering closure first is that the Attorney General says that I just can't do it anymore. Um, but the problem with the continuity, this judge said, Well, how many months should I continue it? Two months, three months on one? It puts judges in the immigration judges into a bit of a bind, right? That how long the immigration judge isn't considered to have authority to order us to decide the case quickly. Well, the fourth circuit in Romero, uh, abrogated Castro tongue, you know, concluding that the board and the immigration judges, in fact, you have the general authority to reach the question. We would certainly urge you to agree with the fourth circuit. Um, all of the reasons that made the immigration judge hesitate to grant continuance are reasons why it would make sense for administrative closure to exist. Because sometimes you just can't quite identify how long it's gonna take for C. I. S. To decide. Yeah, you beat the matter. Um, if you agree with us on the first point, then these other questions are, I guess we'd say that our first argument would be a more efficient way to not that that's the only issue, of course, but there's certainly be a more efficient way to handle these questions. The case would be terminated, at least until the U. V. Says decided or denied or something. Um, and then the immigration judge wouldn't have to worry about remembering to watch the case on his or her docket. Judge wouldn't have to figure out how long to continue the case for how many times the case can be continued. So I don't understand. Under the under under that approach, I don't understand why the termination of the removal proceedings could then be made contingent upon the outcome of the U visa. It seems like what you're talking about again is the kind of the as one that, you know, it wouldn't affect the U visa. I mean, or like, stay with me here like this is this is stepping through and I may be misunderstanding because obviously the immigration statutes are incredibly complex. But in the general waiver provision that the judge relied on here 11 82 d three a two. There's it says that in that exercise of discretion, the I J is essentially granting temporary immigrant status. Um, or sorry, admitted temporarily as a non immigrant. So is that what you're arguing should be the result of this? That it would be sort of like a temporary status because that provision also explicitly gives the judge the authority to condition it upon certain things. And here it could be conditioned on obtaining the U visa. Or am I misunderstanding what that kind of temporary non immigrant status would be? Well, the U status is itself actually a non immigrant status. Um, and so technically, and this goes to your earlier question on the bifurcation here, the waiver weighs the in this ability down. And then U. S. A. S. When they admit the person into U visa status, now they've been admitted as a running with it. We don't know of any reason why an immigration judge couldn't condition the termination upon the, you know, the person falling through on the U visa. But even if certainly there's no doubt under the regulations, the government has the authority to revoke the D three waiver grant. And so it's a year from now denied the U visa. At that point, it would seem entirely appropriate for them to go ahead and revoke the waiver grant and then put the, um, put my client back in the removal proceedings. So the A. V. Can result in the waiver of disability? Yeah. In the end, yeah, I think it should be for some sort of intervening cause. But I see no reason why the cause couldn't be that, you know, the investigating decided it didn't qualify for some such thing. But that is different than the administrative closure route. Administrative closure is like a state of frozen animation. It freezes the case, and it's in that posture, wherever it was. And the proceedings don't go forward, but they don't end either. And then, you know, the problem my brother can speak to this, you know, where you have a non citizen who's in immigration detention. What happens with that person if their cases continue to administratively close? How long government keep detaining them? Should government keep detaining them? These get to be complicated questions, and you know, they're somewhat easier. You resolved if you took our first view of the case. I think I'm in my rebuttal time, so it doesn't have further questions. I'll reserve the remainder. Thank you very much. Okay. Uh, Mr Murphy. Hello. Basically, the court Russell Burberry for the attorney general in light of citizenship and immigration services. Um, having placed this petitioner on the wait list for a new visa and granted deferred action. This case, the petition for viewers really move basic position. You really didn't want to deport him. You could have agreed to the continuance. So you obviously wanted to keep it live. In some respect, you could granted administrative stay. I don't understand why. If you truly wanted to take him off the rolls, you wouldn't have taken that route. Well, the only problem is, Your Honor, we can't just simply, um, grant an administrative closure because under cash or come there has to be a regulation that a grant that authorizes that, um, they are. I can go into why the Fourth Circuit position is wrong because they omitted much of the language from the controlling regulations that they looked at. But the the immigration judge cannot just give a continuance or shouldn't give a continuance under board precedent that could last as other counsel just admitted, perhaps five years. So there's neither really continuance that would work, nor an administrative closure that why would why would that continuance? Why would a continuance of a year at a time be unreasonable? We often see cases where immigration judges, um, continue a hearing for a year or more. Well, we continue it for perhaps a year because they know that. Okay, here's the filing deadline case of the asylum application where I'm gonna give you this amount of time to come up with the evidence you need to support your asylum application. But I don't really recall many cases where they say we're gonna give you one year at a time or five years would be required in this case or five separate continuances for an unknown date down the road as to when, um, a particular visa number is going to become available. So let's compare, for example, Colorado River extension. Okay. Um, where we've got parallel litigation in federal and state courts and the appropriate step is a stay. Uh, that stay may remain in effect for months, maybe for years while the other case goes forward. Um, I'm not sure that I see why maintaining a live executable removal order is an improvement on that situation. Your Honor, the way that the board has set up its continuance person, you know, there has to be. It also comes down to the fact that there has to be the efficient disposition of a case. Um, let's let me, uh, interrupt if I could for a moment and see if I can identify my most fundamental problem with this case. Um, you're familiar with the theory of the unitary executive, right? Your Honor, you might have to help me out with that one. Everybody in DHS and in the Department of Justice works for the president, right? Correct. Everybody's part of the Article two executive branch, and the attorney general in the Department of Homeland Security secretary both serve at the pleasure of the government. And in essence, those secretaries or those or the people who work for them are both each making each other's job difficult in a case like this, right? In some respects, yes, Your Honor. I mean, we have we have a track in the immigration court and a track in the, um, in the DHS. Um, and sometimes those tracks don't always line up perfectly to get things done. That's yes, Your Honor. Right. And so what we've got here is a situation in which the result of the particularized structures set up by regulations and and statutes as they're being applied, for example, the reluctance to issue continuances or the new opinion from the attorney general saying you can't do administrative closure. The result is you've got right hand and left hand within the unitary executive blaming each other for a consequence that is pretty clearly arbitrary and capricious in that you guys are trying to remove a fellow who just needs to wait a little bit longer to qualify for a new visa that Congress created. Your Honor, I will, you know, I'll agree with your point that the federal government I've been in it for 27 years between military and the DOJ time and we're not always the most efficiently run organization in the world. But if you look at the way the regulation is structured for this particular case, this alien right now is sitting exactly where he needs to be under a TFR section, uh, 214.14 D two. Welcome family is determined to be eligible, but the cap is reached. What you do is you go on the wait list and you get deferred action. That deferred action stops any removal, whether it's for the immigration court or the attorney general has no power right now to remove the family because the deferred action is in place. That's just good. Forgive me. This is Judge Rovner in very difficult times. The man is waiting for the other shoe to drop. We don't know what the next missive out of any of these agencies will possibly do. And in terms of a continuance, when you have an alien who has been diligent seeking collateral relief as the IJ found that Mr Mason Morales has been, but the timeliness of the relief available to him turns on the backlog of another agency. Shouldn't we talking about a continuance that is as long as it's realistically necessary for the other agency to adjudicate his entitlement? He's entitled to the collateral. Your Honor, I would, Your Honor, I'm going to attack. I'm not gonna attack. I'm gonna answer that question in two parts. And the first part is, like I said a moment ago, this alien under the regulation is where he needs to be and protected by deferred action from removal order. So we can take this case out of the end of the immigration court and move it there. However, if the court feels so inclined to do something to protect this alien, what it can do is hold the case in a bank here with status reports, just like it did in another case with Mr Roth. So watch her more as versus bar docket number 18 2882. There's another way to handle this case. But my point is, is that the regulation places alien exactly where he needs to be under deferred action. And when this is finally approved, section 28 CFR section 214.14 C five I then takes it over and says the removal order from the immigration judge can be opened, reopened and moved to terminate. That's you know, you said that he can pursue a U visa even if he is removed from the country. If he were removed, would he have to file a new application and start from square one as Mr Mason Morales suggest? Or would he still remain where he is in line for a U visa based on his prior application? I've seen nothing in the regulations that address that a forfeited application when a person leaves the United States. But with the deferred action in place, there isn't going to be a removal or the only we're not fighting to remove this. And we are fighting for the position that the alien can have a waiver of disability alongside an existing removal order. What Mr Rock wants this court to issue is an advisory opinion that those two situations are incongruent. But if you look at the regulations that govern this, there actually has to be removal authority concurrent with waiver authority. You can't have one without the other. And the two have to exist at one point, especially the regulation that I just cited. Your honor section 80 of our 2 14.14 C 51 says that you have the removal order. And then when the person finally gets off the waiting list and actually gets their official visa and nonimmigrant status, the existing removal order, which had to be waived at one point, is then is then reopened, terminated and done away with. So no one's seeking to remove this alien. We're simply seeking to to understand that the authority have an inadmissibility of waiver exists alongside the authority for the immigration judge to order this particular alien removed, especially in light of the faith in the fact that let's say this alien does something right now or down the road that would remove him from you visa status, like failing to cooperate. Should the perpetrators of the wound that he suffered be captured and prosecuted? Then what should we do? Start a whole new removal proceedings? Why can't the police rely on the existing removal order that there's no longer a basis to waive just for the purpose of getting the U visa? I mean, if this court decision that L. D. G. Set up this whole situation where immigration judges have to do both, they have to evaluate removal and waiver. But but council L. D. G. Is on the book, so we just have to accept that. And I mean, it kind of boils down to if your position is truly that he ought not be removed while his visa application is pending. There seems to be wide agreement amongst everyone that the question is just what is the right procedural mechanism to permit him to stay while the U visa is being until he's finally eligible to get the U visa, maybe five years from now. Well, the procedure that already exists already in the regulation is called deferred action, and that's what this alien got as soon as his application was adjudicated. But that means that we've been quite vulnerable. Yes, with the shoe drop. The other shoe is could drop it. I ask. Could I ask you to to frame that answer in terms of the language of the regulation you're C five Roman at one. Um, let me pull that regulation up there. Okay, the one you've just been discussing. Um, yes, sir. And so the I think the second or third second sentence of that regulation says for a petitioner who is subject to an order of exclusion, deportation or removal issued by the secretary, the order will be being canceled by operation of law. As of the date of U. S. C. I. S. Is approval of form I 9 18. Does that apply to the petitioner here? No, it doesn't. He's not under a secretary order. He's under an immigration judge order. He falls in the second thing. Okay, so then we get to the last sentence that applies to this fellow, right? Yes, sir. Subject. Okay. Issued by an immigration judge of the board. They seek cancellation. Um, and would the board join in such a motion at this point? Well, it wouldn't be for the board. You could reopen before the board. I mean, the board could do it. So a spot day or the most likely the ice council may agree. It's a matter of discussion to join such motion overcome. Um, you'd be willing to do that in this case. If the person is granted their you visa, and they're on the list, and they're fully complying with all their obligations, and they haven't done anything, I don't see why I wouldn't, Your Honor. Is is Mr Mesa Morales currently in custody? Not that I'm aware of. Brother Council probably speak that better than I could. Okay, thanks. Um, as I said, the real situation here is, I mean, is there really a controversy between before the court at this point when the family has deferred action, which is due to continue on the family? I'm sorry, has a has a majority in line for the U visa, so there's nothing left to adjudicate opinions was to adjudicate the visa. All is a waiting game at this point. And when he has deferred action, that's a good as an in many respects for the family. In fact, that's probably better because this case is completely off the commit off the docket, as opposed to just administrative closure in the Castro time, which keeps on the inactive docket at the immigration court. So there really is no case of controversy before this court at this point, because the court cannot really fashion any remedy that really gets advances. This petitioner's interest if the court I asked you the case there. Go ahead. One more question. At least at least one more. Um, but the deferred action. Um, could you point me to that in the regulations? That's right. That deferred action is that H. C. F. R. Section 2 14.14 B. Two. It's eligible, but the cap is reached. The alien goes on a wait list and issued deferred action. And that's what happened. I'm looking. I don't see the deferred action language there. Um, it's on. I'm sorry. Yes, it's section two. Wait list. All eligible petitioners who are due the cap are not granted. You. Immigrant status must be placed on a wait list. And then if you read down last look at U. S. U. S. Will grant deferred action direction. Yes, sir. There it is right there. Okay. It's a rather long, lengthy paragraph. Sorry. Got it. Thanks. Okay. No problem. Glad I could help. Uh, I'm going to have to ask you to wrap up. Oh, yes, Your Honor. What? Like I said, we would ask that the court rule on the motion to dismiss and find that there's no longer a case in controversy because this court can really formulate no relief that would advance the petitioner's position. But if the court does continue to go forward, there are other options that the court is so inclined to protect this petitioner, perhaps holding the case in a bay here with regular status reports rather than, um, uh, trying to say that continuance is appropriate, where even it continues from the original judge is not going to change the petitioner's position because he remains in the current action status perspective. Um, uh, forgive me. Uh, Mr Furby, do you have the name of the case that is being held in advance? The one that I have here is so watching Morales, Your Honor. It's docket number 18 to 882. So watching morale. Uh, thank you very much. All right. Thank you, Mr Ross. Um, you asked for four minutes. Thank you. Um, so it's a lot to do. Um, so to begin with, deferred action is the formula thread that holds the sort of an increase above my client's head. Um, the government correctly notes that by regulation, when you're found eligible for a new visa, you're put into deferred action. There's nothing in the regulation that says when what that deferred action can't be revoked. And the Supreme Court and the University of D. C. So that's a kind of a prosecutorial discretion power that it's not in the court's ability to reverse. So in short, um, we certainly would be in a position of total vulnerability to any regulatory or sub regulatory changes. Um, on he says that deferred action is in a better place than the continuance. But I don't understand that my client has a removal order that if the government changes its rules or its approach tomorrow can be effectuated without delay. Um, now I want to go back from. So the government's position, you could say, like there's a strong version of the government's position. The strong version says, well, Mr. Macy Wallace can just pursue his views even after he's deported. Congress in the statute passed by both towns and it says the purpose of you to prevent deportation of you applicants. So that can't be right. The weak version of their argument says, well, we're gonna order you deported, but we don't really mean it. You don't have to actually leave. My client's still here because this court entered an emergency stay order. Well, my client was in the process of being deported. He was, I believe, actually at the airport waiting for a flight back to his home country when the court's order came through. So to say that the case may seem bloodless at this point, but the consequence of the government's, um, view, if you accept it, is that you applicants are gonna face removal from the country while their cases are being pending. And it doesn't seem to us any kind of fair answer to say that the judicial or quasi-judicial order that's being entered, the removal order, is somehow lawful only because an enforcement agency isn't going to execute it. That's inconsistent with the nature of a legal proclamation, which is why we argue that the board is sort of advocating its obligation to decide whether a removal order is appropriate in that case. As to the termination of Question X, what we'd say is the board is given no sound reason why termination isn't an available option. And we grant that there are, you know, distinctions in other cases, but at a minimum the board should be required to give some reason, some sound reason, why that should be so and why it's appropriate. Is there any other situation that you can think of where the board would terminate a proceeding for removal on grounds of admissibility with kind of caveats that you were identifying before, like subject to, you know, the denial of the U visa in which it can be reopened. Is there any other situation in which it does that? Well, certainly a case can be terminated. It's a rare situation, but where there's been some sort of fundamental violation of rights, such that the evidence that the government has of alienage gets suppressed, that's very rare. But that's different than what we're talking about here, right? Because we're talking about here saying that you're inadmissible, but oh, never mind, that will be revoked if in the end USCIS denies the U visa application. So I'm just wondering if there's an analogous situation in which you're granted the waiver of inadmissibility and the proceedings terminate, you're not removable, but they're terminated conditionally so that they can be reopened and then you can be removed and the waiver of inadmissibility goes away subject to something happening by another agency later. I know of no case on this on all fours here. That's the short answer to your question. There's none against us and there's none for us. The authorities that we've cited are all for other waivers, and as Your Honor pointed out, in other factual situations. Here we have a statutory bifurcation where the judge can't grant the U visa itself, and so the question is, well, what happens? The government says we should order the deportation and then let the person pick it up with the enforcement agency whether that's actually And we don't think that can be the right answer. Certainly a continuance or administrative closure is the way the other options or No, I see the options, counsel. I'm just trying to figure out where the board gets the legal authority, and I can see why as a practical matter your option one is attractive. I just can't, I'm just struggling to figure out where the board has the legal authority to do what you're Well, the statute does give the board and immigration judges authority to grant waivers and to determine inadmissibility. So part of the question, I guess this is a somewhat circular answer, but it's our view that it's in the nature of a waiver to waive inadmissibility. And the government's view sort of takes that waiver and gives it effectively no effect in the removal proceedings. Inadmissibility is waived, but it's not waived. And maybe the board can justify that, but we don't think they have at this point. So to the extent, your honors, these are great questions, and they're ones we think the board should have been grappling with, and there's no evidence that it did. And just sort of giving it to Dix, well, you know, we can't terminate because you were found inadmissible, but the waiver was granted. That's really not an answer, respectfully. So we think that we would ask the court at a minimum to remand for further analysis on that issue. And of course, even if the court were to rule in our favor on the first point, the board could always propose and come up with a different analysis under Brand X that could, you know, change reference to that new interpretation. Mr. Roth, what if we took Mr. Vervey's suggestion and simply hold the case while issuing a short opinion explaining why we're doing what we're doing, and deal with similar cases in similar ways? If the immigration judges don't want to hold it on their dockets, we could do it on our docket. Well, it worked in this case because Mr. Benjamin Morales was pro se in his hearing before the immigration judge. We, a legal services agency, ended up taking on his case. It works as long as you imagine all of these applicants in the new proceedings somehow getting counsel or somehow figuring their way through it. That's an awful lot of removing for somebody to be pro se. And so the consequence of that approach is certainly that some people are going to be faulted. And indeed, I mean, you know, the sub-regulatory authority says that they're supposed to stay in removal while there's a visa. I mean, there had been a visa waiver grant. And nonetheless, he denied the stay and didn't tell us about it until he was on his way to the airport. You know, if we hadn't been in a position to sign on an emergency stay motion within less than an hour, he would have been gone. And so, I mean, certainly what happened to Mr. Szilagyi is better than, you know, nothing. But it doesn't seem like an adequate solution overall. Of course, it's in the court's credential judgment how to handle these matters. But it doesn't seem like that's, we don't think that's ultimately the right answer. A continuance or administrative, you know, we don't agree, obviously, with the government's contention that a continuance or administrative closure accomplishes nothing. At a minimum, the board could hold off on entering the removal order and leave the case either at the board or at the immigration judge level. Okay. I want to thank Mr. Roth and Mr. Verby. We all hope that your families and you will stay well. The case, of course, will be taken under advisement. Thank you.